# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SONYA R. TURNER, )
)
       Plaintiff, )
)
v. ) Case No. CIV-14-391-SPS
)
CAROLYN W. COLVIN, )
ACTING Commissioner of the )
Social Security Administration, )
)
       Defendant. )

## OPINION AND ORDER

The claimant Sonya R. Turner requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on September 9, 1964, and was forty-eight years old at the time of the administrative hearing (Tr. 131, 253, 260). She has a high school education, vocational training in radiology, and has worked as an x-ray technician (Tr. 131, 153, 315). The claimant alleges that she has been unable to work since May 1, 2010, due to fibromyalgia, anxiety, cellulitis, obessed [*sic*], and back problems (Tr. 314).

### Procedural History

On March 23, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Trace Baldwin conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 10, 2013 (Tr. 109-22). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(b), with occasional pushing and/or pulling (including the operation of hand and/or foot controls), kneeling, crouching, and

climbing ramps or stairs; frequent balancing and stooping; but never crawling or climbing ladders, ropes, or scaffolding (Tr. 115). The ALJ further found the claimant could perform simple tasks with routine supervision; relate to supervisors, peers, and co-workers on a superficial work basis; adapt to routine changes in the work environment; and sit and/or stand at the work place without a loss of productivity; but could not relate to the general public (Tr. 115). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, lens inserter, cutter and paster, and assembler (Tr. 122).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly assess her credibility, and (ii) failing to properly evaluate the opinion of consultative examiner Dr. Rolison. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the right knee status post right knee arthroscopy, osteoarthritis, fibromyalgia, hepatitis C with elevated liver function tests, obesity, affective disorder, and anxiety disorder (Tr. 111). The medical records reveal that prior to the alleged onset date, the claimant was treated regularly for abdominal pain (including eventual gallbladder removal surgery in February 2010), was diagnosed with hepatitis C, and received treatment for anxiety (Tr. 510-34, 536-44, 596-625). After the alleged onset date, the claimant frequently reported pain in her back, neck, and/or shoulders, and the various assessments included lumbar strain,

myalgias, posttraumatic fibromyalgia, cervical spondylosis, bilateral chronic arthralgia at her shoulders, and chronic cervical sprain (Tr. 465-69, 734-35, 741, 759, 765-69, 873). The claimant also reported frequent right knee pain, and underwent right knee surgery on January 25, 2012 (Tr. 440, 444, 688-89, 710-12, 772-73, 778-79, 832).

As to her mental impairments, the claimant established care with Dr. C. Snow on June 26, 2012, who treated her through early 2013 (Tr. 1115-16). Dr. Snow diagnosed the claimant with generalized anxiety disorder and polysubstance dependence (in remission), and prescribed an antianxiety medication (Tr. 1115-16). During the same time period, the claimant also attended counseling appointments with licensed clinical social worker Jody Cleburn (Tr. 1096-98, 1100, 1102, 1106, 1108, 1110-11, 1113-14, 1122-25, 1129-30).

Dr. Mary Rolison conducted a consultative psychological examination of the claimant on June 8, 2011 (Tr. 629-38). Dr. Rolison noted the claimant showed "a great deal" of psychomotor agitation, an anxious and depressed mood, a labile affect, goal-directed thought processes when directed, and was distracted and tearful with disorganized thought processes at times (Tr. 631). Dr. Rolison found the claimant had average intelligence and abstract reasoning skills, sound judgement, and related well interpersonally (Tr. 632). She diagnosed the claimant with generalized anxiety disorder, posttraumatic stress disorder, along with a provisional diagnosis of major depressive disorder recurrent, moderate (Tr. 633). Dr. Rolison opined that the claimant would have significant difficulty with job duties requiring significant attention, concentration, and persistence skills and could have problems working around many people (Tr. 633).

On July 26, 2011, and January 4, 2012, respectively, state reviewing psychologists Dr. David Clay and Dr. Sally Varghese affirmed an unsigned and undated Psychiatric Review Technique (PRT) form which stated that the claimant's mental impairments consisted of major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder, and further indicated that she had moderate impairments in the categories of activities of daily living and maintaining concentration, persistence, or pace, but only mild impairment in maintaining social functioning (Tr. 649-59, 667, 724). Dr. Clay and Dr. Varghese also affirmed an unsigned and undated Mental RFC Assessment wherein it was concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 663-66, 667, 724).

At the administrative hearing, the claimant testified she was unable to work because she had no upper body capabilities (Tr. 133). Specifically, she testified that she has constant pain and swelling in her right knee; that her fibromyalgia causes constant pain in her neck, shoulders, back, and elbows, and numbness and tingling in her hands; and that she experiences weight gain, hair loss, and tremors as side effects from her medications (Tr. 134, 139-41, 145). The claimant stated she could sit for 20 minutes, stand for 5 minutes, walk less than a block, and lift a half-gallon of milk (Tr. 147-48). She further stated she could not squat, bend, lift a coffee cup, or write, but she could pick up small objects, turn a door knob, and remove the lid from a bottle of water (Tr. 149, 151). As to her mental impairments, the claimant testified she was being treated for

posttraumatic stress disorder and anxiety, and that she has difficulty staying on task and focusing (Tr. 136-37).

In his written opinion, the ALJ extensively summarized the claimant's hearing testimony, as well as the medical evidence contained in the record, a Third Party Function Report submitted by the claimant's sister, and a letter submitted by the claimant's pastor. For his credibility analysis, the ALJ listed the relevant factors, and found the claimant not entirely credible due to number of factors. As to the opinion evidence concerning the claimant's mental impairments, the ALJ gave no weight to Dr. Rolison's opinions, stating they were inconsistent with both her own examination finding that the claimant related well interpersonally, and the medical evidence showing the claimant provided care for an elderly man (Tr. 119). Although the ALJ gave no weight to the unsigned PRT form and Mental RFC Assessment, he gave great weight to the opinions of Dr. Clay and Dr. Varghese, and again noted that the claimant cared for an elderly man and attended church regularly (Tr. 120).

The claimant first argues that the ALJ erred by failing to properly assess her credibility. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d at 801. Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain

'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In this case, the ALJ summarized the claimant's testimony and determined that her "statements concerning the intensity, persistence, and limiting effects of her symptoms [were] not entirely credible for the reasons explained in this decision" (Tr. 18). In reaching this conclusion, the ALJ mentioned the applicable credibility factors and discussed numerous reasons for disbelieving the full extent of the claimant's allegations of disabling limitations, including: (i) a lack of evidence of physical manifestations of severe pain, (ii) several inconsistencies between her testimony and the evidence of record, (iii) her own reports of improvement with medications, and (iv) the relatively normal objective medical evidence (Tr. 115-118). Thus, the ALJ linked his credibility determination to the evidence as required by *Kepler*, and provided specific reasons for the determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

The claimant next argues that the ALJ erred in evaluating the medical source opinion evidence from consultative examiner Dr. Rolison. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215

(10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's treatment of Dr. Rolison's opinions, as described above, meets these standards. The Court also agrees with the Commissioner that even if the ALJ erred in his analysis of Dr. Rolison's opinion, such error becomes harmless because the ALJ's RFC did account for any impaired attention, concentration, and pace skills by limiting the claimant to simple tasks with routine supervision, and further accounted for any impaired social skills by eliminating all contact with the general public and by limiting her to superficial work-related contact with her supervisors, peers, and coworkers. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156 (10th Cir. 2012) (finding harmless error where medical opinions not weighed or incorrectly weighed were either consistent with or more prejudicial to the claimant than the ALJ's findings).

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court

simply cannot do. The ALJ specifically noted every medical and non-medical record available in this case, *and still concluded* that she could work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004).

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**